# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

   Plaintiff,

v.

Kimberly Susan Latham,

   Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 12-25 ADM/FLN

___

David P. Steinkamp, Esq., Assistant United States Attorney, Minneapolis, MN, on behalf of the Government.

Caroline Durham, Esq., Assistant Federal Defender, Minneapolis, MN, on behalf of Defendant Kimberly Susan Latham.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Kimberly Susan Latham's ("Latham") Objections [Docket No. 30] to Magistrate Judge Franklin L. Noel's March 8, 2012 Report and Recommendation [Docket No. 29] ("R&R"). Judge Noel's R&R recommended denying Latham's Motion to Suppress Eyewitness Identification [Docket No. 9] and Latham's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 10]. After a thorough de novo review of the record and for the reasons stated below, Latham's Objections are overruled and Judge Noel's R&R is adopted.

## II. BACKGROUND

The factual and procedural history of this dispute are set forth more fully in Judge Noel's R&R and are incorporated by reference. Accordingly, an abridged version of the relevant facts

is presented below.[1]

A.M.A., a fourteen-year-old girl, ran away from her mother's home in Chisago City, Minnesota, on October 12, 2011. She returned home on or about November 13, 2011. A.M.A. had run away with an underage girl, D.R.W., who was still missing when Chisago County Sheriff's Officer Tracy Armistead ("Officer Armistead") interviewed A.M.A. on November 21, 2011. Officer Armistead interviewed A.M.A. for the purpose of determining D.R.W.'s location.

At the November 21, 2011 interview, A.M.A. told Officer Armistead that she and D.R.W. met a woman named "Kim," who offered to help the girls. The girls stayed with Kim, who was a prostitute, and she taught them how to become prostitutes. Officer Armistead did not know that A.M.A. had been involved in prostitution before the interview, and A.M.A. was under no threat of arrest.

A.M.A. gave Officer Armistead a physical description of Kim and informed her that Kim went by the online screen name "Sarah" on Backpage.com. Armed with the name and physical description, Officer Armistead combed Backpage.com advertisements and discovered one photo matching A.M.A.'s description. A.M.A., A.M.A.'s mother, a social worker, and Officer Armistead were all present in a room where Officer Armistead pulled up the Backpage.com photo, Exhibit List [Docket No. 21] Ex. 4, and asked A.M.A. "Is this her?" A.M.A. looked at the photo and responded, "That's Kim."

On November 29, 2011, Minnetonka Police Department Detective Andrew Gardner questioned Renee Maddox ("Maddox"), the manager of the Cedar Ridge apartment complex, in

---

[1]The R&R's findings of fact are based on the in-court testimony of Officer Tracy Armistead and Detective Andrew Gardner which occurred at the motion hearing on February 15, 2012.

search of D.R.W. Gardner showed Renee Maddox two photos, one of D.R.W. and one of Kim. Maddox recognized Kim as Kimberly Latham and said that she lived in apartment #102. Detective Gardner visited Maddox again on February 10, 2012, asked her about her contacts with Latham, and confirmed that Latham was "Kim."

On February 3, 2012, Latham filed her two suppression motions, and on March 8, 2012, Judge Noel recommended denying those motions in his R&R. Latham now objects to this R&R.

### III. DISCUSSION

**A. Motion to Suppress Eyewitness Identification**

Latham argues that A.M.A.'s and Maddox's identifications of her must be suppressed because the officers used impermissibly suggestive procedures and the identifications were therefore not reliable.

The Due Process Clause of the Fourteenth Amendment protects a defendant from the admission of evidence "so extremely unfair that its admission violates 'fundamental conceptions of justice.'" Dowling v. United States, 493 U.S. 342, 352 (1990) (citation omitted). "The principle that a State may not knowingly use false evidence . . . [is] implicit in any concept of ordered liberty. . . ." Napue v. People of the State of Ill., 360 U.S. 264, 269. Courts employ a two-step inquiry to determine whether eyewitness identification has been tainted by police officers in violation of due process. First, courts determine whether "law enforcement officers use[d] an identification procedure that is both suggestive and unnecessary." Perry v. New Hampshire, 132 S.Ct. 716, 724 (2012). Where the procedure was both suggestive and unnecessary, courts next inquire whether the "improper police conduct created a 'substantial likelihood of misidentification.'" Id. (citation omitted). "[R]eliability is the linchpin in

determining the admissibility of identification . . . ." Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Factors courts consider in determining reliability include:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199 (1972). Where these factors suggest that the "indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances," the identification evidence will be admitted for the jury to weigh. Perry, 132 S. Ct. at 720.

Witness identification of a suspect based on a single photograph may be, but is not always, unnecessarily suggestive. Using the reliability factors, the Eighth Circuit has held that a police officer's use of a single suspect photograph for identification with witnesses "already familiar" with that suspect is not unnecessarily suggestive. United States v. Dobbs, 449 F.3d 904, 909–10 (8th Cir. 2006). When a witness who had only seen a suspect for a few minutes was shown a single photograph of that suspect, labeled with his name, on the day of his testimony, the Eighth Circuit held that the in-court identification was unnecessarily suggestive but still reliable and unlikely to result in misidentification. Ruff v. Wyrick, 709 F.2d 1219, 1220 (8th Cir. 1983).

The photo identification procedure Officer Armistead administered to A.M.A. was neither unnecessarily suggestive nor was it likely to result in a misidentification. A.M.A. was familiar with Latham because she had lived with her for several weeks. Officer Armistead never told A.M.A. that Latham was a criminal suspect, but rather that she was trying to locate D.R.W. Like the witnesses in Dobbs, A.M.A. was already familiar with the suspect and, indeed, was not

4

even aware that she was being asked to identify a suspect. Officer Armistead's display of a single photograph, then, was not unnecessarily suggestive because A.M.A. had no idea what it could have been meant to suggest.

Furthermore, A.M.A.'s identification of Latham was reliable. Her familiarity with Latham, based on her two weeks of interaction with Latham, is evidenced by her detailed description of Latham, as well as her knowledge of her Backpage.com photographs, profile, and screen name of "Sarah." A.M.A.'s admitted use of drugs with Latham during their two-week relationship does not cast significant aspersion on her ability to identify Latham. A.M.A.'s confident identification, coming as it did only a week after she had last seen Latham, is reliable and unlikely to result in a substantial likelihood of misidentification.

Maddox's identification of Latham is similarly admissible, because Detective Gardner's photo display was not unnecessarily suggestive and unlikely to result in a misidentification by Maddox. Neither Gardner nor Maddox knew that Latham was suspected of the crime of prostitution. Detective Gardner knew only that Latham might know the whereabouts of a runaway juvenile, D.R.W. Maddox had not witnessed a crime and was not being asked to identify a crime suspect; rather, she was being asked to identify a resident of the apartment complex. Detective Gardner simply showed Maddox two photos — one of D.R.W. and one of Latham — and asked if either of them lived in Maddox's apartment complex. Maddox's identification of Latham's photograph, based on at least five encounters with her, is admissible because it is reliable and was not procured through unnecessarily suggestive means.

**B. Motion to Suppress Evidence Obtained as a Result of Search and Seizure**

Latham also argues that the search warrants were unsupported by probable cause and

therefore that all evidence seized under those warrants should be suppressed.

Warrants must be supported by probable case and contain a particularized description of the place to be searched and people or things to be seized. See U.S. Const. amend. IV. An affidavit accompanying a search warrant needs to provide the signing judge a substantial basis for finding probable cause that a search would find evidence of wrongdoing. Illinois v. Gates, 462 U.S. 213, 236–39 (1983). A probable cause finding depends on the totality of the circumstances, including an informant's veracity, reliability and basis of knowledge. Id.; see also Alabama v. White, 496 U.S. 325, 328 (1990). The information supporting a finding of probable cause is considered cumulatively rather than independently.

Here, the affidavit supporting the application for the search warrant to Latham's apartment was sufficiently particular in its description of the property to be searched ("10101 Cedar Lake Road Apartment #102") and the items to be seized (including electronic devices, sexual images of juveniles, cash, and items commonly associated with prostitution). See Exhibit List Ex. 1. The facts alleged in the supporting affidavit are detailed and specific, both regarding the particular prostitution scheme for which the warrant was sought as well as items commonly discovered in search of an apartment associated with prostitution. Id. Additionally, the warrant application includes photographic advertisements from Backpage.com associated with Latham and the address, and the address matches a driver vehicle listing for Latham. Id. Under the totality of the circumstances, the facts alleged in the warrant application and supporting affidavit establish probable cause that evidence of underage prostitution would be found in Latham's apartment. The evidence seized during the execution of this valid warrant is therefore admissible.

Similarly, the search warrants for the two telephones identify the particular information sought, as well as a detailed factual basis similar to that included in the search warrant for Latham's apartment.  See Exhibit List Ex. 2.  Under the totality of the circumstances, probable cause existed to support the issuance of this search warrant, and the resulting evidence seized during the search is admissible.

## IV.  ORDER

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Latham's Objections [Docket No. 30] are **OVERRULED**;

2. Judge Noel's Report and Recommendation [Docket No. 29] is **ADOPTED**;

3. Defendant Latham's Motion to Suppress Eyewitness Identification [Docket No. 9] is **DENIED**; and

4. Defendant Latham's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Docket No. 10) is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 5, 2012.